Parker, J.
In this case a petition was tiled in the court of common pleas of this county, on the 23d day of November, 1896, which sets forth that on the 17th day of October, 1892, the defendants, Eliza B. Chatfield and William H. Chatfield, by separate deeds of assignment, severally assigned all their property to the plaintiff, for the benefit of their creditors, which assignments were duly filed as 3:53 o’clock, p. m., on the 19th day of October, 1892, in the probate court of Hamilton county, Ohio, and thereupon the plaintiff duly qualified and entered upon his duties as such assignee. Reading from the petition:
“Said deeds of assignment include‘all and singular the rents,tenements, hereditaments and appurtenances, goods, chattels, stocks, promissory notes, debts, choses in action, evidences of debt, claims, demands, property, and effects, of every description, belonging to them severally, wherever he same may be situated, the same to beheld by said Joseph T. Harrison in trust, to sell and dispose of said real and personal property. First: — -For the payment of lawful costs. *600 Second: — Payment of claims of creditors in full and ratably. Third: — The balance, if any, to be returned to them severally. ’
“Plaintiff says that at the time of the execution of said deeds of assignment, the said Eliza W. Chatfield was the owner, subject to a life or dower interest of Mary O. Wade, of the undivided one-eighth of lot 63, Port Lawrence subdivision of the city of Toledo, Lucas county, Ohio, and which, by the terms of said deeds of assignment, were conveyed to the plaintiff on the date aforesaid. SEN.'
“Plaintiff says that the affairs of said assignment have never been settled, and that he is still duly qualified assignee of the property of said Eliza W. Chatfield and Wil liam H. Chatfield.
“Plaintiff says, that while acting under the deeds of assignment, and before the affairs had been settled, (and which, after the sale of all other estate, real and personal, which came to the knowledge of plaintiff, was insufficient to pay the debts of said Eliza W. and William H. Chatfield), the said Eliza W, and William H. Chatfield, on the 12th day of March, 1894, by a deed recorded March 9th, 1894,' at 10:15 a. m., in the office of the recorder of Lucas county, Ohio, and by a pretended consideration of|3,000, conveyed the said real estate by a deed of general warranty, (subject to the interest of said Mary C. Wade), to a certain Charles B. Eggleston, then, and now, a resident of Chicago, Illinois. That notwithstanding the said conveyance, the said Eliza W. Chatfield and William H. Chatfield, have since continued and still continue, to treat said real estate as their own.
“Plaintiff says, that at the time of said defendants making said deed, they were largely indebted and insolvent; that said conveyance was fraudulently made, and for simulated and pretended considerations, and was made to hinder, delay, and defraud the plaintiff in the execution of his trust, and their creditors of their just and lawful debts.”
. The petition contains a prayer for the setting aside of the deed from Eliza W. Chatfield and William H. Chatfield to Charles B. Eggleston, and for general relief.
To this petition, the defendant, Eliza W. Chatfield, answers, denying that any interest which she then had in lot *601 63, Port Lawrence division, Toledo, Ohio, was conveyed or was intended to be conveyed by the deed of assignment from her to the said plaintiff referred to in said petition, and denying that the sale and conveyance of March 12, _1894, to the defendant, Charles B. Eggleston, was fraudulently made, or made for a simulated or pretended consideration, or was made to hinder, delay, and defraud the plaintiff in the execution of his trust, or her creditors in the collection of their just and lawful debts.
But she avers, on the contrary, that said sale and conveyance to the defendant, Eggleston, was for a full and valuable consideration paid her therefor, by said Eggleston, And she denies that since said conveyance she has continued to treat said real estate as her own.
The defendant, Eggleston, also answers, denying “that the deed referred to in said petition, from Eliza W. and William H. Chatfield, to him, for the Toledo property, was fraudulently made, or was for simulated or pretended considerations, or was made to hinder, delay and defraud the plaintiff in the execution of his trust, or the creditors of said Chatfields of their just and lawful debts.” Denies that the Chatfields, since the conveyance, treat the property as their own. He avers that he purchased it in good faith, for a valuable consideration, and that at the time of said purchase he had no knowledge that the plaintiff had, or made any claim to said real estate under the assignment to him set out in said petition. And he also avers, “that no assignment from said Eliza W.' Chatfiied, conveying to said plaintiff any interest she had in said lot, had been recorded in Lucas, county prior to the record therein, of the aforesaid deed to him.”
The defendant, William H. Chatfield, files no answer; but it appears that the property in Lucas county, with reference to which this controversy arises, was owned by Mrs. *602 Chatfield, and that the only interest Mr. Chatfield had in it, was a contingent right of dower; so the fact that he is in default for answer, is of no consequence.
It will be observed that the pleadings admit that the deeds of assignment were executed on October 17th, 1892, and filed with the probate judge of Hamilton county on the 19th day of October, 1892; and that of Mrs. Chatfield, was not filed or recorded in the office of the recorder of Lucas county, Ohio; also that the deed of Eliza W. Chatfield was executed on March 14th, 1894, and recorded in Lucas county, Ohio, on March 19th, 1894; and that the trustee has not administered the interest of Eliza W. Chatfield in the Lucas county property. The fact that' the deed of assignment was not recorded in Lucas county, was admitted by the pleadings or established by uncontroverted evidence upon the trial.
The denial by Mrs. Chatfield that this property was conveyed, is met and overcome by the production of the deed of assignment. That deed, in which her husband joins, releasing his contingent right of dower or curtesy, reads in part as follows:
“Have granted, bargained, sold, assigned, transferred, and set over, and by these presents do grant, bargain, sell, assign, and set over, etc., all and singular the lands, tenements, hereditaments, appurtenances, goods, cLattels, stocks, promissory notes, debts and choses in action of every description, belonging to her, wherever the same may be situate, except such property as is by law exempt from execution.”
Her averment to the effect that she did not intend to convey this property to the assignee, must be disregarded. There is no averment of, or effort to establish, by proof, such fact as would authorize a reformation of the deed of assignment so as to make it conform to her alleged intent.
The conveyance to Eggleston was constructively fraudu *603 lent as to her, and there is some testimony tending to show that she had knowledge of the fact that she had no right to convey this property. Her attorney cautioned her to make no mention of her assignment to any prospective purchaser, for fear, as he says, that such person might think that their Lucas county property was conveyed or affected by the deed of assignment. He further testifies, that he was subsequently applied to by Eggleston for information about the interest of Mrs. Chatfield in this property. That he stated to Eggleston that he had no information he could give him about the property, and he referred Eggleston to the records in Lucas county. According to his testimony, which is corroborated in that particular by that of Mrs. Chatfield, the fact of the assignment was carefully concealed from Mr. Eggleston. There is sufficient in this, to show that Mrs. Chatfield appreciated the fact that her right to convey the Toledo property was at least doubtful, and consequently, to justify a conclusion that the act upon her part was not free from the taint of intentional fraud. There is much shown as to the acquaintance, relationship, and association of Mrs. Chatfield and Mr. Eggleston and their families. Taken in connection with the apparent keenness and capability of Eggleston as a man of affairs, and his knowledge of the financial circumstances and property holdings of Mrs. Chatfield, in and about Cincinnati, it makes it difficult for us to believe that he had at this time no knowledge of her failure and assignment for the benefit of creditors. He admits that he knew that she was very much in need of funds, and that the proposed disposition of the Toledo property, was for the purpose of enabling her to raise funds. It is passing strange that in their conferences on this subject, no questions were asked, or suggestions made by him as to availing herself of the property, at and about Cincinnati. He admits, too, that he knew of the assignment made by Mr. Chatfield, a fact *604 that need not have been, and probably was not disclosed in the course of these negotiations. This assignment was made at the same time and in conjunction with that made by Mrs. Chatfield. If he did not know of her assignment, it would seem that there must have been not only the practice of deceit upon her part, but such a closing of the eyes and abstaining from investigation on his part, as to make him a very easy, if not a willing victim of her deceit. His answer that at the time he received this conveyance “he had no knowledge that said plaintiff had made any claim to said real estate under the assignment,” is not a denial of knowledge of the assignment. But now he comes and testifies that he had no knowledge of the fact that Mrs. Chat-field had made an assignment, and that he relied upon the information that the recorder of Lucas county gave him; and that Mrs. Chatfield and others told him of the condition and value of the property, (he did not come here, to seejt), and upon that he gave full value for the property That this property was taken at a valuation of $3,000, and certain Boody House stock was taken at a valuation of $750, and he conveyed to Mrs. Chatfield,in exchange therefor, certain real estate in the city of Chicago, of the value of $3750, We do not feel authorized, however, to disregard this positive testimony, and give effect to our surmises and suspicions as to this transaction, and therefore we find on this issue in favor of the defendant, Eggleston, to-wit: — ‘that he is a bona fide purchaser for value, and without knowledge or actual notice of the assignment.
This brings us to a consideration of the other question, arising on the fact that the deed of assignment was duly filed in the probate court of Hamilton county, the county of the assignor’s residence at the time of the assignment, but was not recorded in Lucas county at the time of the conveyance of this property from Mrs. Chatfield to Eggleston. Upon the part of the plaintiff, it is contended that the deed *605 became effective and was constructive notice of wbat it Contained as to all the world, upon its beipg so filed in said probate court, so that Eggleston cannot avail himself of the plea that he is an innocent purchaser for value, etc. That sec. 6335, takes such deed out of the purview of sec. 4134, Rev. Stats. Sec. 6335, being the first section of the chapter upon the subject of voluntary assignments, provides as follows:
“When any person, partnership, association, or corporation, shall make an assignment to a trustee of any property, money, rights, or credits, in trust for the benefit of creditors, it shall be -the duty of said assignee, within ten days after the delivery of the assignment to him, and before disposing of any property so assigned, to appear before the probate judge of the county in which the assignor resided at the time of executing the said assignment, produce the original assignment, or a copy thereof, cause the same to be filed in the probate court, and enter into a bond, payable to the state, in such sum and with such sureties as shall be approved by the court, conditioned for the faithful performance, by said assignee, of his duties according to law; and the court may require the assignee, or any trustee subsequently appointed, to execute an additional undertaking whenever the interests of the creditors of the assignor demand the same; any such assignment shall take effect only from the time of its delivery to the probate judge, and the exact time of such delivery shall be endorsed thereon by the probate judge, who shall immediately note the filing on the journal of the court. ”
Sec. 4134, is upon the subject of the recording of deeds, and reads as follows:
“All other deeds (the preceding section referring to mortgages), and instruments of writing for the conveyance or incumbrance of any lands, tenements, or hereditaments, executed agreeably to the provisions of this chapter, shall be recorded in the office of the recorder of the county in which the premises are situated, and until so recorded or filed for record, the same shall be deemed fraudulent, so far as re *606 lates to a subsequent bona fide purchaser, having, at the time of purchase, no knowledge of the existence of such former deed or instrument.”
Counsel for Eggleston contend upon the contrary, that to be effective as to bona fide purchasers for value, without notice, of real estate situate in another county of the state than that of the assignor’s residence, and of its filing with the probate court, the deed of assignment must be recorded in the office of the recorder of the county where such real estate is situated. That sec. 6335 makes such filing with the probate court essential to the taking effect of the deed as against creditors only, while as to all others, and especially an innocent purchaser for value, sec. 4134, controls.
Counsel for the defendant refer us to a case in 15 Pa. St., 399, which they urge throws some light upon this proposition, it being assumed that the statutes of the state of Pennsylvania, upon the subject of the recording of deeds of assignment and other deeds, are similar to the statutes of the state of Ohio. The syllabus of that case reads as follows:
“A voluntary assignment of real estate for the benefit of creditors, not recorded in the county in which the land was situate, is not valid as against a subsequent purchaser from the assignor, without notice of the assignment, even though it was recorded in the county in which the assignor resided, within thirty days, in pursuance of the fifth section of the act of March 24th, 1818. ’ ’
At page 402:
‘‘Per Curiam. — The act of 1818,was made for the protection of creditors: the act of 1775, was made for the protection of purchasers. They are consistent in their provisions; and there was no design to impair the latter. There was no evidence of actual to supply the place of constructive notice; and if there had been, the fact was left to the jury.”
*607 It will be observed that our statute upon the subject of filing and recording deeds, is of earlier date than that upon the subject of executing and filing deeds of assignment; and so it was urged here, that our act on the subject of deeds of assignment, providing for their being filed with the probate judge of the county of the residence of the assignor, was, in the language of this court, made for the protection of creditors; whereas, the earlier act upon the subject of other deeds, was made for the protection of purchasers; that the two are consistent, and may stand together; that the earlier is not impaired or affected by the latter. But when we come to examine the statutes of Pennsylvania upon this subject, we find them to be, as we view them, quite different from ours. All I need read is sec. 13 of the act, upon the subject o'f assignments, appearing at p. 121-, of vol. 1 of Brightly’s Pruden’s Digest:
“All assignments so as aforesaid, to be made and executed, which shall not be recorded in the office for recording of deeds in the county in which such assignor resides, within thirty days after the execution thereof, shall be considered null and void as against any of the creditors of the said assignor. ”
We are also cited to a casein 58 Ind., 56 — Switzer et ux. v. Miller et al., — in which there is a similar holding. I need not stop to read the case, but it holds in effect upon the Indiana statute as does the Pennslyvania case upon the Pennslyvania statute. But upon examining the Indiana statute upon the subject of assignments and the filing and recording of deeds of assignment, we observe there, that also the filing provided for in the act is limited in its effects to the creditors. So that the court might have well held, as it did, that as to all others the general statute upon the subject of filing and recording deeds, was in full force, and applied to deeds of assignment as well as to other deeds.
*608 Counsel for tbe defendants concede that, under the authorities in Ohio, it is not necessary to record a deed of assignment in the county of the assignor’s residence to have it take effect as to bona fide and innocent purchasers for value, and that the filing in the probate court has that effect in that county, as to real estate in that county. This concession, it seems to us, is inconsistent with the claim that the filing with the probate court makes the deed effective as to creditors only. There is no ground, that we can discover, for the distinction that such filing is effective in such county, not only as to creditors, but as to innocent and bona fide purchasers for value, while in other counties it is effective only as to creditors. We can see no reason why sec. 4134, must not apply to all counties, if to any. The fact that the doctrine of lis pendens may so apply as to afford a reason for not complying with sec. 4134, in such county, does not affect the question of its operation there. But we think it clear that it has been settled by our own supreme court that sec. 4134, does not govern or apply, and that the filing with the probate judge is effective not only as between the parties and as to creditors, but that it amounts to constructive notice to all the world as to land situated in any county of the state. I read from the syllabus of the case of Betz v. Snyder, p. 492, 48 Ohio St. Reports:
“1. A mortgage of real property, which has not been deposited for record with the recorder of the proper county, before an assignment of the property by tbe mortgagor for tbe benefit of his creditors takes effect, is not a valid lien upon the property, as against the assignee, or the creditors; nor does it become so by being subsequently recorded.
“2. Such an assignment takes effect, as to all persons, from, the time of the delivery to the probate court of the county in which the assignor resided at the time of its execution. It is not necessary that it be also filed for record with the recorder of deeds.”
*609 A distinction between this case and that is pointed out. In that case, the land in respect to which the question arose, was situated in the county of the assignor’s residence, and the county therefore, where the deed of assignment was filed with the probate judge; but it will be observed that the syllabus, which states the law of the case, makes the rule apply as well to other counties as to that county. Tüere is no stress laid by the court upon the fact that it was real estate in the county of the assignor’s residence, or where his deed of assignment was filed; but the reasoning of the court is to the effect that the law laid down by the court applied to all counties of the state, as well to those in which the assignor did not reside, and where the deed of assignment was not therefore filed,as to the county of his residence and the county of the filing of the deed of assignment. I read from the opinion, at page 503:
“But, is it essential to the validity of an assignment of real property, as to third persons, that the deed should be recorded in the office of the county recorder? As a deed conveying real property, it falls within the class of instruments whose record is provided for by sec. 4134, of the Rev. Stats., and is subject to its provisions, unless controlled by other statutory regulations made especially applicable to such assignments. The whole subject of assignments by insolvent debtors for the benefit of their creditors, is specifically provided for, and regulated, in detail, by chap. 4, of tit. 2, of the Revised Statutes. By the first section of that chapter, (sec, 6335), it is made the duty of every assignee, within ten days after the delivery of the assignment to him, to cause it to be filed in the probate court of the county in which the assignor resided at the time of its execution; and it enacts, that every ‘such assignment shall take effect only from the time of its delivery to the probate judge, and the exact time of such delivery shall be endorsed thereon by .the probate judge, who shall immediately note the filing on the journal of the court, and it may be delivered by the assignor to the probate judge, either before or after its de *610 livery to the assignee. ’ Upon the filing of the assignment, the assignee is required to enter into a bond for the faithful performance of his duties; and from that time, the administration of the assignment becomes a pending proceeding in the probate court, and so continues, until the trust is fully executed. Notice that the assignee has qualified, is required to be given by publication, and notice must also be given by publication or otherwise, of various steps in the proceedings The probate court is invested with complete jurisdiction of the whole subject-matter of the assignment, and of its administration to final completion. Its records, equally with those of the courts of common pleas, and of the records of deeds and mortgages, are constructive notice of wh.at they are required to contain. It is a rule of construction, that special statutory provisions for particular cases, operate as exceptions to general provisions which might include the particular cases. The object of those provisions of sec. 6335, to which we have referred, was not, we think, simply to provide when, and how, assignments should become operative as between the parties to the instrument. They were not necessary for that purpose. As between them, the conveyance is complete without a compliance with those provisions. Their design evidently was, to fix definitely a time from which such instruments should take effect as to all persons. And, it having been so specially enacted, that assignments for the benefit of creditors shall take effect from the time of their delivery to the probate judge, the courts are not at liberty to annex, as a further condition to their taking effect, that they shall also be deposited with the recorder of deeds. This conclusion is sustained by the decision of the supreme court of Massachusetts, in Guildford v. Childs, 22 Pick., 434, which involved the interpretation of statutes very similar to ours.”
This decision of the supreme court is approved and fortified, as we think, by a decision appearing in 49 Ohio St., 392 — the case of Webster v. Clear. I will read from the opinion, delivered by Minshall, J., beginning at p. 397, and which opinion states the facts of that ease sufficiently, so that it may be understood:
*611 “Both parties in this ease claim title to the land in question from the state to whom they belonged in 1853, as a part of its canal lands. In that year, Charles Elliott purchased the lands for a valuable consideration, and in 1854, received a deed therefor, executed by the governor in due form, which, as required by law, was duly recorded in the record of deeds of canal lands, kept in the office of the auditor of state. It was not, however, recorded in the recorder’s office of the county of Paulding, where the land is situate, until 1875. The plaintiff derives his title from Elliott, by a deed duly executed. In 1871, Webster and Wise, without actual notice of the deed to Elliott, for a valuable consideration, purchased the same lands from the state, and received a deed thereof, in due form of law. Their purchase was made under the provisions-of an act passed April 15, 1866, providing ‘for the sale of the remaining canal lands belonging to the state.’ 63 Ohio Laws, 140.
“The principal question in the case is, as to the effect of the omission of Elliott, or his grantee, to cause the deed executed to him for the land in 1854, to be recorded in the office of the recorder of Paulding county, until after the purchase had been made by Webster and Wise. The defendant claims, that under the provisions of our recording act, the deed to Elliott is of no avail against him, as he and Wise are bona fide purchasers, having at the time they made their purchase, no knowledge of the existence of the former deed.
“We do not adopt this view. Whether the provisions of the act providing for the recording of deeds and the effect of an omission to do so, in terms applies to a deed made by the act of April 15, 1857, (54 Ohio Laws, 160), for the recording of all deeds made by the state, in the auditor’s office, and though this act was passed a few years subsequent to the sale to Elliott, it is made applicable by its terms to any lands that ‘have heretofore been sold or may hereafter be sold;’ and this deed was recorded in the auditor’s office, in the record of canal lands, as found by the court. This special provision for the recording of deeds made by the state, must, agreeably to the decision in Betz v. Snyder, 48 Ohio St., 492, be regarded as superseding the general provision on the subject. It was there held, that the deed of an insolvent assignor for the benefit of *612 creditors, takes effect and is notice to all persons from the time it is filed in the office of the probate judge, without having been recorded in the office of the recorder of the county, on the ground ‘that special statutory provisions for particular cases, operate as exceptions to general provisions which might include the particular case. ’ Hence, a deed from the state, executed and recorded as prescribed by this statute, necessarily becomes notice to all persons, that the land described in it has been sold and conveyed to a purchaser; and no one, unless by his negligence, can be a subsequent purchaser without notice.”
Avion E, Wilson, and Harrison & Aston, for Plaintiff.
Waite & Snyder, for Defendants.
As I have said, we regard these decisions as settling the controversy beyond question, and that there is nothing left for this court to do, but to observe and follow these decisions of the supreme court upon the subject.
There will be a decree for the plaintiff, as prayed for in the petition.